**STATE OF UTAH, on behalf of itself and all others similarly situated, Plaintiffs,**

v.

**AMERICAN PIPE AND CONSTRUCTION COMPANY; United Concrete Pipe Corporation; Utah Concrete Pipe Company; W. R. White Company; United States Steel Corporation; Kaiser Steel Corporation; Smith-Scott, Inc.; U. S. Industries, Inc., Defendants.**

**No. 69–1964.**

United States District Court
C. D. California.

Dec. 17, 1969.

Vernon B. Romney, Atty. Gen. State of Utah, Mulliner, Prince & Mangum, Gerald R. Miller, Denis R. Morrill, Neslen & Mock, Kent Shearer, Salt Lake City, Utah, for plaintiffs.

George W. Jansen, San Diego, Cal., Sullivan, Jones & Mitchell, James O. Sullivan, Wayne M. Pitluck, San Diego, Cal., for American Pipe & Construction Co.

Ryley, Carlock & Ralston, G. Read Carlock, Phoenix, Ariz., Olmstead, Stine & Campbell, Richard W. Campbell, Ogden, Utah, for W. R. White Co.

Thelen, Marrin, Johnson & Bridges, Gordon Johnson, San Francisco, Cal., Clyde, Mecham & Pratt, Edward W. Clyde, Salt Lake City, Utah, for Kaiser Steel Corp.

Paul, Hastings, Janofsky & Walker, Oliver F. Green, Jr., Los Angeles, Cal., Moyle & Moyle, Hardin A. Whitney, Jr., Salt Lake City, Utah, for U. S. Industries.

Gibson, Dunn & Crutcher, Robert E. Cooper, Los Angeles, Cal., Fabian & Clendenin, Peter W. Billings, Salt Lake

City, Utah, for United Concrete Pipe Corp. and Smith-Scott, Inc.

VanCott, Bagley, Cornwall & McCarthy, Haldor T. Benso, Salt Lake City, Utah, O'Melveny & Myers, Thomas J. Ready, Los Angeles, Cal., for Utah Concrete Pipe Co.

Dominic B. King, Law Department, United States Steel Corporation, Pittsburgh, Pa., Musick, Peeler & Garrett, John M. Robinson, Jesse R. O'Malley, Los Angeles, Cal., Parsons, Behle, Evans & Latimer, Calvin A. Behle, Salt Lake City, Utah, for United States Steel Corp.

## DECISION ON DEFENDANTS' MOTION OPPOSING CLASS ACTION

PENCE, District Judge.

On May 13, 1969, the State of Utah filed this "western pipe" Sherman § 1 antitrust action against certain concrete and steel pipe manufacturing companies, seeking treble damages and injunctive relief on its own behalf and in addition, claimed to represent a class described as (1) "those public bodies and agencies of state and local government in the State of Utah who are end users of pipe acquired from the defendants, co-conspirators and others" [1] and (2) those states in the Western Area which have not previously filed a similar action.[2]

Defendants have moved for an order that the action not be maintained as a class action.

Plaintiff denominated "those states in the Western Area" as being the states of "Wyoming, Nevada and Idaho", and includes along with them the public bodies and agencies of the states and local governments in those several states and Utah who are end users of pipe acquired from the defendants, etc. Appended to plaintiff's memorandum in support of its class action allegations is a list of what this court can only determine to be every incorporated whistle-stop, hamlet, village, town, city, county, and water and sewer improvement district in Utah, Nevada, Wyoming and Idaho. The several collections of whistle-stops, etc., total some 300 for Utah, 240 for Idaho, 270 for Wyoming, and 31 for Nevada.[3] Plaintiff did not represent that each was actually an end user of pipe—plaintiff just made a list.

As indicated in the chronological history of the western pipe cases set forth in this court's decision of August 1, 1969, in Maricopa County v. American Pipe and Construction Co. et al., 303 F.Supp. 77 (D.Ariz.1969), the government's criminal complaint against some of the defendants named in the instant action was filed on March 10, 1964, and on June 23, 1964, the government's civil actions were started.

As this court held in *Maricopa,* the government's criminal and civil actions tolled the statute of limitations until May 24, 1969. Beginning in August 1964, Clayton § 4 treble damage antitrust actions were thereafter filed by the states of Hawaii, California, Oregon, Washington and Arizona against American Pipe and Construction Company, United Concrete Pipe Corp., U. S. Steel, Kaiser Steel, Smith-Scott Inc., and U. S. Industries, all defendants herein, as well as other defendants, charging exactly the same general antitrust conspiracies, etc., as set forth in the *Utah* complaint. In each of the complaints of the states of Hawaii, California, Oregon and Washington, and of the United States, as well as in three other of the 100 separate end user actions filed "in the Western Area", these actions were denominated "class

1. Complaint, para. 1, pp. 1–2.

2. Complaint, para. 2, p. 2.

3. The Nevada list includes the City of Las Vegas, which on January 9, 1968, filed its own private western pipe antitrust

civil action in No. 1107–LV, District of Nevada, against American Pipe and Construction Company, Martin-Marietta Corp., and United Concrete Pipe Co., and concluded the same by way of settlement on November 20, 1968.

actions" under the old (pre 1966) Rule 23, F.R.Civ.P. This court, treating them as spurious class actions, permitted intervention by all aggrieved public bodies of those several states and gave ample time for joinder. The sum total of the actual parties joining in the class actions, in those four states, plus the state and other public bodies in Arizona, as well as the City of Las Vegas, Nevada, and other private end user actions, totaled some 350 plaintiffs. All of the parties involved in the "class actions" have settled their claims and the actions have been dismissed. The United State Government has also settled its end user claims arising out of the "western pipe" conspiracy, as have all other but some one-half dozen late, late filing individual claimants.

Massive discovery, with depositions in depth of the knowledgeable employees of the major conspirators, together with centralized deposit of thousands of documents relative to the underlying alleged conspiracy, is long since ended. The publicity regarding the suits—covering interim rulings by this court over the past five years, published in CCH Trade Regulation Reports, BNA Law Week, and West's Federal Supplement, together with newspaper publicity anent filing of suits and settlement sums received by public bodies, has been spread throughout the western states during the past five years.

The court will take judicial notice that in November of 1968 at the conference of the National Association of State Purchasing Agents, held in Honolulu, representatives of the State Purchasing Agents of Nevada and Utah were present when this judge delivered an address covering in depth some of the problems of antitrust litigation in the western pipe cases. This court will also take judicial notice that Lewis Markus, Chief, Economic Section, Antitrust Division, United States Department of Justice, has been, as he himself admits, "somewhat of a fixture on the program of each of the Association's annual meetings since about 1961," and has reported to the state purchasing agents on problems of identical bidding and significant antitrust cases brought in each preceding year. The court will also take judicial notice that there is a National Association of Attorneys General which holds annual conventions. The court will also take judicial notice that each of the public bodies who joined in the western pipe litigation actions above indicated, had its own private attorney, although the litigation was headed up in almost every instance through the states' attorneys general. In those cases, as in this, in most instances, private antitrust counsel was employed to assist the states.[4]

It is with the above background that the court here approaches the threshold problem facing every court in all Rule 23(b) (3), F.R.Civ.P., problems, viz.: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." F.R.Civ.P., Rule 23(c) (1).

---

4. The instant problem was argued on December 1, 1969. On that morning, an Assistant Attorney General for the State of Idaho filed an affidavit (its first and only) in support of the class action, in which the following appears:

"The Attorney General of the State of Idaho has heretofore relied exclusively upon Special Assistant Attorneys General appointed from private law firms to represent the state in antitrust matters. Prior to May 13, 1969, the Special Assistant Attorney General informed ROBERT M. ROBSON that the State of Idaho did not sustain sufficient damage as a result of the alleged violations in the above entitled matter to warrant the expense involved in instituting an independent action on behalf of the State of Idaho. Relying upon this advice, the Idaho Attorney General did not file a complaint against the above named Defendants.

"Information subsequently came to the attention of the Idaho Attorney General that * * * Utah had filed * * * suit * * *."

The complaint, on its face (even though its allegations but narrowly escape violating the minimum requirements of Rule 23(b), in that it barely goes beyond repetition of the language of the Rule, (see Gillibeau v. City of Richmond et al., Ninth Circuit, 417 F.2d 426 (1969)), when considered with the list of some 800 inferentially potential plaintiffs referred to above, would appear, superficially, to meet the first prerequisite under Rule 23(a), viz., that the class is so numerous that joinder of all members is impracticable—but more of that hereafter. The allegations that there are questions of law and fact common to the claims, likewise would appear to have some merit in that as this court would judicially notice, from its five-year experience dealing with this same western pipe problem, some threads of a common "western pipe" conspiracy involving some of the here named defendants have been found in each of the states and localities involved in the actions heretofore filed. Also the court would notice that the parties involved in the alleged conspiracy shifted from not only state to state but locality to locality, as did the effect of the conspiratorial acts upon prices. The court notes, for example, that the Utah Concrete Pipe Company and the W. R. White Company, defendants herein, have never been named in any other complaint heretofore filed in the western pipe end user cases and that in their moving papers in the instant class action problem they allege that they have not operated outside of the state of Utah. An inference to be drawn from the above, of course, would be that other parties defendants might well have to be joined in the other three states affected by the alleged class action. Even if this occurred, however, the court would recognize that there would probably be questions of law and fact common to the "class" claims insofar as the underlying alleged conspiracy of the defendants named herein other than White and Utah Concrete. Thus, on its face, the complaint would apparently meet the second prerequisite of Rule 23(a).

Moreover, the claims of the state of Utah for injury and damages resulting from the alleged conspiracy would probably be generally typical of the claims of the states of Idaho, Wyoming and Nevada, but this court's past experience in the "western pipe" cases has shown that the percentage of artificial price increase, resulting from absence of meaningful competition and stemming from the alleged conspiracy, has varied from locality to locality, not only between states but between localities within the several states. While this might nevertheless meet the prerequisites of Rule 23(a) (3), it would create a question as to whether or not the representative party could adequately protect the interests of the several members of the class. This inner conflict was heretofore illustrated by the difference between Washington Public Power Supply System claims, as contrasted with those of the State of Washington,[5] wherein the State of Washington settled out and the Washington Public Power went to trial on its separate and independent theory of damages. But per'haps this too might not be fatal to the plaintiffs' class action.

What *is* fatal to plaintiffs' class action allegations are the raw facts of the past five years litigation on almost precisely the same facts and problems of law set forth in plaintiffs' complaint, and this prior litigation is a criteria which this court must consider in resolving the "threshold problem." Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2 Cir., 1968).

At the time the various "class actions" were heretofore filed in the various states, as previously indicated they were "spurious class actions", thereby necessitating joinder. Suit and complaint no-

---

5. Washington Public Power System v. American Pipe and Construction Co. et al., Civil No. 6568, W.D.Wash.; State of Washington et al. v. American Pipe and Construction Co. et al., Civil No. 3157, W.D.Wash. [280 F.Supp. 802]

tice was given to public bodies throughout the states of Hawaii, California, Oregon and Washington by the several attorneys general to all potential plaintiffs in those several states. The end result of such notices was that thereafter there was a joinder of all public bodies which had claims against the several "western pipe" defendants. This court had no difficulty whatsoever in handling the conjoined problems of members of the so-called classes.

Therefore, although here plaintiffs have alleged that the class is so numerous that joinder of all the 800 listed potential members is impracticable, this court cannot accept that numerical list as in any way truly representative of the number of public bodies in the several states who were actually affected by the alleged conspiracy—nor is it so alleged. Based upon population and population expansion in those states over the past twenty years, the court could take judicial notice that the number of end users in Hawaii, Arizona, California, Washington and Oregon should at least be more than seven times as many as the total number of end users in the four states named in the present "class." In any event, the court can but conclude that the number of public entities in Utah, Wyoming, Nevada and Idaho who might have been injured by the alleged conspiracy could not possibly exceed the 350 cases heretofore filed by end users in the other states of the "Western Area." From prior actual experience in like cases involving the same alleged conspiracy, this court could not find that number so numerous that joinder of all members was impracticable, nor can it conclude that a class action here would achieve economies of time, effort and expenses or promote any more uniformity of decision than the joinder method heretofore proved successful.[6] To the contrary, the fact of joinder and intervention has made the determination of actual parties plaintiffs and defendants, as well as the percentage of damage determination, much simpler, easier and more practicable than would have been any class action procedure under the present Rule 23(b) (3).

The court therefore finds that the first prerequisites to a class action have not and cannot here be met. Defendants' motion that this action not be maintained as a class action is GRANTED.

This court cannot pass by, without commenting thereon, the statement of Gerald R. Miller, counsel for plaintiffs, set forth in his affidavit in support of class action, page 2:

*"If they had thought the law to be otherwise, the Attorney General in his official capacity would certainly have urged each of these governmental entities to file an individual action. It was determined, however, that such a procedure would do little more than complicate this action with a multitude of individual plaintiffs, each seeking a similar relief based upon a common violation of the law."* (Emphasis added.)

The court notes from plaintiff's affidavits that the Attorney General of the State of Utah and Attorney Miller sometime in October 1968—over six months before the statute of limitations ran—started a study of the western pipe conspiracy. Any detailed study of the litigation then and theretofore pending in the western pipe cases would have disclosed the facts which this court has above recited. A study of the law on the application of a class action to pipe cases as reflected in City of New York v. International Pipe & Ceramics Corp. (44 F.R.D. 584, S.D.N.Y., April 16, 1968) reported in Trade Regulation Reports shortly thereafter, and in Federal Rules Decisions in November 1968, should also have raised a caveat in Utah's determination of the law which might be applied to the present litigation. It should have been unquestioned on the part of the plaintiff's attorneys that individual ac-

6. Notes of the Advisory Committee, 39 F.R.D. 73, 102–103 (1966).

tion by affected parties, particularly the states, large cities and other large public entities in the Western Area, should have been taken long before any class action was belatedly filed in this case, if in fact any of them believed the alleged conspiracy had injured them.

Plaintiffs' attention is also called to Dolgow v. Anderson, 43 F.R.D. 472, 484 E.D.N.Y. January 3, 1968 (Weinstein, J.): Alternative devices of "joinder, intervention, consolidation, and the test case"—"presuppose 'a group of economically powerful parties who are obviously able and willing to take care of their own interests individually through identical suits or individual decisions about joinder or intervention' [quoting from Frankel in 32 Antitrust L.J. 295, 298 (1966)]." The court feels sure that plaintiffs' counsel would agree that his client, as well as most, if not all, members of the so-called class would properly fall into the group described by Judges Weinstein and Frankel.