William R. MAWSON, Bill Oliver, Reuben Jones, Robert Lavelle, Chester P. Uzialko, and Charles Plummer, Plaintiffs,

v.

Edmund C. WIDEMAN, Chairman, Luzerne County Commissioners, Donald D. Dorris, Warden, Terry Paul, Deputy Warden (Complaint Amended to add) Charles Adonizio, Michael Kaminski, Steven Yanoshak, Francis Crossin, Defendants.

Civ. A. No. 78–1096.

United States District Court, M. D. Pennsylvania.

Oct. 26, 1979.

O. Randolph Bragg, Robert W. Meek, Northern Pennsylvania Legal Services, Scranton, Pa., for plaintiffs.

Thomas F. Gill, Wilkes-Barre, Pa., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Before the Court here is Plaintiffs' Motion for Certification as a Class Action.

On November 9, 1978, six Plaintiffs, including Mawson, Oliver, Jones and Plummer, the four involved in this motion, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, attacking various conditions of confinement[1] at the Luzerne County Prison. On December 27, 1978, O. Randolph Bragg, Esquire and Robert W. Meek, Esquire, entered their appearance on behalf of the Plaintiffs.

On May 24, 1979, Plaintiffs Mawson, Oliver, Jones and Plummer filed an Amended Complaint, and on June 11, 1979, they filed a Motion for Class Certification, followed by a supporting Brief. Defendants have not filed a Brief in opposition to this Motion. On July 23, 1979, United States Magistrate Raymond Durkin filed his report recommending that the Motion be denied, and Plaintiffs objected to this report on August 2, 1979. It is the opinion of this Court that Plaintiffs in this action should be certified to represent a class of all present and future members of the general prison population of the Luzerne County Prison.

In order to qualify as a class, Plaintiffs have the burden of demonstrating that the requirements of Fed.R.Civ.P. 23 have been satisfied. *See Blumenthal v. Great American Mortgage Investors, et al.,* 74 F.R.D. 508 (N.D.Ga.1976). This means showing that all the prerequisites outlined in Rule 23(a) and one of the prerequisites outlined in Rule 23(b) have been complied with. Rule 23(a) provides:

Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

---

1. The Complaints include: denial of access to the Courts through denial of access to an adequately stocked library, denial of outdoor exercise, denial of eye and dental care, denial of necessary clothing, denial of local newspapers, supervision of inmates by other inmates, denial of due process prior to punishment, overcrowding of cells, racial segregation, and denial of access to the commissary.

■ Before discussing the four requirements it should be pointed out that there are two other requirements obvious from Rule 23(a), but not explicitly spelled out. Namely that a definable class exists and that the representatives are members of that class. *See* 7 Wright & Miller, Federal Practice and Procedure, *Civil* § 1759, p. 573 (1978).

Plaintiffs have attempted to include in their class those pretrial detainees who are part of the Luzerne County Prison population. But there is no allegation that any of the four named Plaintiffs is a member of this class.[2] We therefore will not allow certification of a class to include this segment of the prison population.

The requirements of Rule 23(a):

(1) Numerosity and Practicality of Joinder.

Plaintiffs have stated that the general population at Luzerne County Prison was approximately 147 inmates. Courts vary as to the size requirements necessary for a class action. *See Philadelphia Electric Company v. Anaconda American Press Co.*, 43 F.R.D. 452 (E.D.Pa.1968), (class action with 25 members); *State of Utah v. American Pipe and Construction Co.*, 49 F.R.D. 17 (C.D.Cal.1969) (350 members did not make joinder impractical). But perhaps the most instructive case in this area is *Inmates of Lycoming County Prison v. Strode*, 79 F.R.D. 228 (M.D.Pa.1978). In that case Chief Judge William Nealon held that an inmate population of 40–50 made joinder (as opposed to a class action) impractical because the class included future inmates. Similarly in the present case, since the number of inmates is considerably numerous and since the class seeks to include future inmates, we find that joinder is impractical, and a class action would be more expedient.

(2) Common Questions.

■ In the present case the issues focus upon the conditions of the prison and treatment of the general prison population. It is not required that common questions predominate; all that is required is that they exist. *See Somers v. Abraham Lincoln Federal Savings and Loan Association*, 66 F.R.D. 581, 586 (E.D.Pa.1975). Factual issues common to the class include the adequacy of the law library, denial of eye and dental care, and denial of clothing and exercise. The common legal issue focuses upon the standard that this Court should apply to the internal management of the Luzerne County Prison. We therefore conclude that common questions do in fact exist in this action.

(3) Typicalness of Representatives' Claims.

Since all of the named Plaintiffs are, or were, inmates of the general prison population, their claims are typical of the class.

(4) Adequacy of Representatives.

■ The adequacy of representation depends upon two factors: (1) Plaintiffs' attorney must be experienced, qualified, and able, and (2) Plaintiffs must not have interests antagonistic to those of the class. *Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239, 247 (3rd Cir. 1975), *cert. denied* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Plaintiffs are represented by Northern Pennsylvania Legal Services, who assert that they will adequately represent the prison inmates, and we are satisfied that they will do so. And since our class will consist of present and future members of the general prison population, we do not foresee any antagonistic views among members of the class.

Finally, Plaintiffs must satisfy one of the requirements of Fed.R.Civ.P. 23(b). Plaintiffs make their claim for certification pursuant to 23(b)(2). Rule 23(b) coupled with 23(b)(2) reads:

Class Actions Maintainable. Any action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (2) the

---

**2.** In addition, Magistrate Durkin has indicated that Plaintiffs have failed to establish that the class of pretrial detainees is so numerous that joinder would be impractical.

party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

Rule 23(b)(2) is especially designed for civil rights cases. *See* Advisory Committee Notes to the 1966 amendment to Rule 23; 7A Wright & Miller, Federal Practice and Procedure, *Civil* § 1776, p. 35 (1978). Plaintiffs contend that Defendants are involved in or have acquiesced in the alleged deprivations. Plaintiffs allege that Defendants have acted on grounds applicable to the class and they have requested final injunctive relief. It is the opinion of this Court that the present action is correctly brought pursuant to Rule 23(b)(2).

United States Magistrate Raymond Durkin stated in his opinion that four factors precluded him from recommending certification of the class. These four factors were (1) Plaintiffs' Motion for Certification was not timely filed; (2) Plaintiffs have sought damages on behalf of the four named Plaintiffs only; (3) Plaintiffs have not sufficiently established a class with regard to pretrial detainees; and (4) There is a general policy against class actions in prisoner matters.

Plaintiffs dispute the factual finding of the Magistrate with regard to the first two points listed above; they assert that their motion was timely, and that they seek damages on behalf of all Plaintiffs. Although, we are inclined to accept the Magistrate's findings, we will extend the benefit of any doubt to the Plaintiffs, since it would be especially burdensome to eliminate their claim on a procedural matter when the Defendants have completely ignored and failed to oppose this motion. With regard to the third issue above we are in full accordance with the Magistrate, and we will refuse to certify the class to include pretrial detainees.

Granting certification as a class action essentially calls into play a judicial review of much of the operation of this prison, and we take such action with considerable concern and reluctance. But the lack of response to the Complaint and Motion almost compels such a result.[3] In recent years much has been seen and heard concerning Federal Courts, particularly, intervening in various phases of public administration, and we are of the opinion that this should occur sparingly and only under unusual circumstances. The doctrine of the separation of powers, which is one of the cornerstones of our form of democracy, demands that each branch of government respect the other's sovereignty in certain areas. But when an individual, (be he prisoner or free man) alleges conduct which rises to a Constitutional deprivation, and when he alleges he can get no other response, the Court must at such times provide a forum for hearing these complaints. This case provides a classic example of this latter situation, when the Defendants have utterly failed to answer Plaintiffs' allegations.

The United States Supreme Court in the past five terms has entered several decisions concerning Constitutional challenges to prison conditions or practices. *See Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Most of these opinions advise restraint against interfering in the daily problems of correctional institutions. At the same time, they acknowledge the right of prisoners to have their claims of Constitutional deprivations properly aired.

In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), decided May 14, 1979, the Supreme Court detailed

---

**3.** Although the Defendants in the original Complaint filed Motions to Dismiss (which were denied) and Answers, no Answers at all have been made by any Defendants to the Amended Complaint or to the Motion for Class Certification. (See Report of Magistrate, page 3).

several principles established by these recent cases—

First—That convicted prisoners do not forfeit Constitutional protections by reason of their conviction and confinement in prison.

Second—Simply because prison inmates retain certain Constitutional rights, does not mean that these rights are not subject to restrictions and limitations. Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. There must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.

Third—Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained Constitutional rights of both convicted prisoners and pretrial detainees. Accordingly, even when an institutional restriction infringes a specific Constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.

Fourth—Problems that arise in the day-to-day operation of a correction facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

But judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our government and not the Judicial.

■ Considering this Motion then in light of the authorities cited and acknowledging that Courts are often reluctant to certify prisoner cases as class actions, it is nevertheless our opinion that when conditions challenged are common to the entire population, where there is such a turnover of inmates that the question of mootness stands as a possible barrier to adjudication, where Plaintiffs have retained experienced counsel, and where there is no response from the Defendants, then the cause is well suited for certification as a class action. *See Inmates of Lycoming County Prison,* supra.

Accordingly, we will partially uphold Plaintiffs' objections to the Report of the Magistrate, and we will certify Plaintiffs as a class to include all present and future inmates of the Luzerne County Prison.