**Wilber JIMENEZ,**

v.

**DOMINO'S PIZZA, INC.**

No. CV–04–1107–JVS.

United States District Court, C.D. California.

Sept. 26, 2006.

Isam C. Khoury, Kimberly Dawn Neilson, Michael D. Singer, Timothy D. Cohelan, Cohelan & Khoury, San Diego, CA, Jose R. Garay, Jose Garay Law Office, Irvine, CA, Matthew Roland Bainer, Scott Edward Cole, Scott Cole and Associates, Oakland, CA, for Wilber Jimenez.

Timothy M. Freudenberger, Christopher M. Robertson, Ursula R. Kubal, Carlton Disante & Freudenberger, Irvine, CA, for Domino's Pizza, Inc.

## ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

SELNA, District Judge.

Plaintiffs Wilber Jimenez ("Jimenez") and Yair Rodriguez ("Rodriguez"), on behalf of themselves and other similarly situated, move this Court for an order certifying this suit as a class action, certifying Jimenez and Rodriguez as class representatives, and certifying Plaintiffs' counsel of record as class

counsel. Defendant Domino's Pizza, LLC ("Domino's") opposes, arguing that Plaintiffs have not satisfied Federal Rule of Civil Procedure 23 ("Rule 23").

## I. EVIDENTIARY MATTERS

### A. Evidentiary Objections

As an initial matter, both parties have made several evidentiary objections to the declarations submitted in support of the opposing party's moving papers.[1] The Court has reviewed those objections and will only consider admissible evidence in deciding this motion.

### B. Domino's Request for Judicial Notice

Additionally, Domino's requests judicial notice of the following documents: (1) Decision or Award of the Labor Commissioner in *Malhan v. Domino's Pizza*, State Case No. 05–34052; (2) Division of Labor Standards Enforcement (DLSE) Opinion Letter, dated July 6, 1993; (3) Petition for Bankruptcy by Thomas A. Bueno; (4) Petition for Bankruptcy by Jennifer Covarrubias; (5) Petition for Bankruptcy by Gabriel Martinez; (6) Petition for Bankruptcy by Ubaldo Perez; (7) Petition for Bankruptcy by Sonja J. Perry; and (8) Petition for Bankruptcy by Ali Salamat.

Under Federal Rule of Evidence 201(b) ("Rule 201"), "a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The content of records and reports of administrative bodies are proper subjects for judicial notice under Rule 201(d). *Interstate Natural Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir.1953). A court may also take judicial notice of the contents of public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001). The request is therefore granted.

## II. BACKGROUND

For purposes of this Motion, the Court treats all substantive allegations of Plaintiffs' Complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). Per the Complaint, this is an action for failure to pay overtime wages and a failure to provide rest or meal periods or compensation in lieu thereof in violation of California Labor Law and Unfair Competition Law.

Plaintiffs allege that they were employed by Domino's as general managers of the restaurants. (Second Amended Complaint ("SAC"), ¶¶ 8–10.) Plaintiffs, claim that they were wrongfully classified as executive, administrative, and professional employees thereby wrongly exempting them from the applicable labor laws, including the Industrial Welfare Commission ("IWC") Wage Orders. (*Id.*, ¶ 15.) According to the Complaint, as a result of the mis-classification, Plaintiffs were denied overtime compensation for working more than eight hours a day or forty hours per week, and were forced to work without being given the required rest or meal periods. (*Id.*, ¶¶ 16–20.) Finally, Plaintiffs allege that they should not have been classified as exempt because they were primarily involved in performing non-exempt functions, such as pizza making and cleaning the store. (*Id.*, ¶ 21.) According to the Complaint, in actuality, Plaintiffs spent only a small portion of their time (about twenty percent) performing their actual general manager duties. (*Id.*)

On August 2, 2004, Plaintiffs filed a class action suit in Orange County Superior Court for violations of California Labor Code Sections 1194, 201–03, 226.7, 226(b), IWC Wage Order 5, and California Unfair Competition Law, Cal. Bus. & Prof.Code Sections 17200–17208. Domino's removed the suit to this Court on September 17, 2004.

## III. LEGAL STANDARD

All class actions in federal court must meet the following four prerequisites for class certification:

---

1. The Court notes that both sides have adopted a strategy of blunderbuss, repetitive, blanket objections to the declarations submitted on this motion. The Court finds this strategy an unhelpful diversion. The Court simply notes that each factual finding made by the Court is supported by admissible evidence.

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

In addition, a plaintiff must comply with one of three sets of conditions set forth in Rule 23(b). Under Rule 23(b)(1), a class may be maintained if there is either a risk of prejudice from separate actions establishing incompatible standards of conduct or judgments in individual lawsuits would adversely affect the rights of other members of the class. Under Rule 23(b)(2), a plaintiff may maintain a class where the defendant has acted in a manner applicable to the entire class, making injunctive or declaratory relief appropriate. Finally, under Rule 23(b)(3), a class may be maintained where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy.

■ The decision to grant or deny class certification is within the trial court's discretion. *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir.1977).

## IV. DISCUSSION

### A. Rule 23(a) Prerequisites

#### 1. Numerosity

■ Plaintiffs contend that the class satisfies the numerosity requirement because it would consist of at least 160 members and therefore joinder would be impracticable. (Mot'n, p. 18.) Defendants, on the other hand, contend that joinder is more practicable in this case because all potential class members worked in Los Angeles and are easily identifiable. (Opp'n, pp. 10–11 citing *Andrews v.*

*Bechtel Power Corp.*, 780 F.2d 124, 131–32 (1st Cir.1985)).

There are several factors a court may consider in determining whether a plaintiff has satisfied the numerosity requirement. First, a court may consider whether the size of the class warrants certification. *Gen. Tel. Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Though there is no exact numerical requirement, a class of fifteen or fewer has been rejected. *Id.; Harik v. California Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir.2003). Here, the proposed class is at least 160 members, and therefore is large enough for consideration.

■ "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir.1982) *vacated on other grounds* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). Other factors include geographical diversity, ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought. *Id.* In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64, and 71 were large enough such that the other factors need not be considered. *Id.*[2] Here, where the proposed class consists of 160 members, the Court need not consider other factors.[3]

Accordingly, the Court finds that Rule 23(a)(1) is satisfied.

#### 2. Commonality

■ Rule 23(a)(2) requires that questions of law or fact be common to the class. The Court agrees with Plaintiffs, and Domino's does not contest, that several questions relating to the policy of classifying general managers as exempt without an examination of their actual tasks and time spent on those tasks are common questions of law and fact

---

**2.** The court went on to consider the other factors nonetheless. *Jordan*, 669 F.2d at 1319.

**3.** Defendants point to *State of Utah v. American Pipe & Construction Co.*, 49 F.R.D. 17, 21 (C.D.Cal.1969), as an example where this Court found joinder practicable despite the large class

size of 350 members. In *State of Utah*, however, the court denied class certification because there had already been several years of other litigation addressing the same issues presented in the class suit. These factors are not present here.

common to the proposed class members. Accordingly, this Court finds Rule 23(a)(2) satisfied.

### 3. *Typicality*

In order for a class representative to satisfy the typicality requirement of Rule 23(a), he or she must show that his or her claims do "not differ significantly from the claims or defenses of the class as whole." *In re Computer Memories,* 111 F.R.D. 675, 680 (N.D.Cal.1986). The class representative's claims and the claims of the class must arise from the same events or course of conduct and must be based on the same legal theory. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.,* 122 F.R.D. 251, 256 (C.D.Cal.1988). Plaintiffs claim, and Defendants do not oppose, that the proposed class representatives share typical claims as to whether they were improperly classified as exempt, whether the tasks performed were exempt tasks, and whether they were deprived of rest and meal periods. The Court agrees that the claims of the proposed class representatives are typical and therefore finds the typicality requirement met.

### 4. *Fair and Adequate Representation*

Plaintiffs claim that the Jimenez and Rodriguez will fairly and adequately protect the interests of the class. They claim that neither Jimenez and Rodriguez nor their counsel have any conflicts of interest with any of the putative class members and will prosecute this action vigorously on behalf of the class. (Mot'n, pp. 21–22.) Representation is adequate if(1) the attorney representing the class is qualified and competent and (2) the class representatives are not disqualified by conflicts of interest. *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978).

#### a. *Competency of Counsel*

Looking first at the qualification and competency of counsel, Plaintiffs contend that their counsel is well qualified to prosecute

this action. (Mot'n, p. 22.) Defendants, on the other hand argue that Plaintiffs' counsel is inadequate because counsel permitted Plaintiffs to submit "false declarations," gave incorrect information about a duty to comply with a subpoena, and frivolously instructed their clients not to answer deposition questions. (Opp'n, p. 15.)

Class counsel must be experienced and competent. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1021 (9th Cir.1998). Although the Court agrees that an attorneys' ethics in handling the suit are relevant considerations in determining the adequacy of counsel (Opp'n, p. 13 citing *Brame v. Ray Bills Fin. Corp.,* 85 F.R.D. 568, 576–77 (N.D.N.Y.1979)), the Court does not find Domino's arguments that counsel is inadequate persuasive. Plaintiffs' attorneys of record include: Cohelan & Khoury (C & K), which has been litigating class actions for at least twenty years and has a reputation of expertise in the class action area (Khoury Decl., ¶¶ 4–7; Cohelan Decl., ¶¶ 2–3; Singer Decl., ¶¶ 3) and Scott Cole & Associates, Inc., which is devoted almost exclusively to wage and hour class actions and has prosecuted more than thirty class actions (Bainer Decl., ¶ 3, Exh. A).[4] The Court finds these qualifications satisfy Rule 23(a)(4).

#### b. *Adequacy of Class Representatives*

Rule 23(a)(4) also requires that "the representative parties fairly and adequately protect the interests of the class." Domino's argues this requires the named plaintiffs be familiar with the suit, understand the meaning of the duties of a class representative, and be actively involved in the litigation. (Opp'n, pp. 11–14.) Domino's asserts that Jimenez and Rodriguez are not adequate to represent the class given their testimony that they do not understand the duties of a named class representative. (Rodriguez Dep., 39:5–9; Jimenez Dep., 348:14–16.) Furthermore, Domino's contends that Jimenez and Rodriguez have blindly depended on their counsel and have not taken an active role in litiga-

---

**4.** The Court notes that no information regarding the qualifications of the Law Office of Jose R. Garay has been submitted. The Court is therefore unable to rule on this particular counsel's adequacy.

tion. (Opp'n, pp. 12–13 citing Rodriguez Dep., 33:3–27:21; Jimenez Dep., 347: 2–348:6.)

Domino's relies on *Byes v. Telecheck Recovery Services, Inc.,* 173 F.R.D. 421, 429 (E.D.La.1997), for the proposition that a plaintiff who does not understand the duties of a named class representative is not an adequate representative. In *Byes,* the court found the plaintiff inadequate because she was unfamiliar with the proceedings in the case, was not credible, and had a criminal conviction for theft. *Id.* at 426. Though the court found it somewhat problematic that deposition testimony revealed that the plaintiff was unaware of the status of the case and her duties and only had a rudimentary understanding of the facts of the case, this alone was not a reason to find the plaintiff an inadequate representative. Rather, it was her credibility—namely that she had stated in her declaration that she understood each specific claim and her specific duties when her deposition revealed this to be untrue— and blind reliance on her attorneys that led to a finding of inadequacy.

It is true that, in the case at bar, both Jimenez and Rodriguez submitted declarations stating they understood the duties in representing the class and were willing to "take the steps necessary to pursue this matter to a fair and just conclusion." (Rodriguez Decl., ¶ 16; Jimenez Decl., ¶ 16.) The Court also notes that in their depositions, both stated that they did not understand the duties and Rodriguez stated he did not understand the phrase "steps necessary to pursue this matter to a fair and just conclusion." (Rodriguez Dep., 39:5–9; Jimenez Dep., 348:14–16.) In the reply, and the declarations attached, Plaintiffs explain that the declaration was translated into Spanish for Jimenez and explained to Rodriguez before either signed it, and both stated that they understood the declaration at that time. (Reply, p. 9; Jime-

nez Reply Decl., ¶ 4; Rodriguez Reply Decl., ¶¶ 3, 4.)[5] Nonetheless, although Jimenez and Rodriguez may be unfamiliar with the proceedings, the Court does not find that they are unfamiliar with their claims or the facts of the case. They have personal experience with the claims of this lawsuit and therefore at the least a general familiarity with the case. (*See generally* Jimenez Decl.; Rodriguez Decl.)

Moreover, the Court does not find a blind reliance on counsel.[6] Although Jimenez and Rodriguez testified that they were unaware of the proceedings of the case, they explained in their reply declarations what role they have played in litigation: giving documents to counsel, answering questions, talking to counsel, and contacting counsel for updates. (Jimenez Reply Decl., ¶ 7; Rodriguez Reply Decl., ¶¶ 7.) The Court cannot say that this is blind reliance on counsel.

Accordingly, the Court finds that Jimenez and Rodriguez will be able to adequately represent the class.

### B. *Rule 23(b)*

Having satisfied the prerequisites of Rule 23(a), the Court will now address whether the proposed class falls within the requirements of 23(b)(1), 23(b)(2), or 23(b)(3). Because Plaintiffs contend that they satisfy the requirements of all three, the Court will address each in turn.

#### 1. *Rule 23(b)(1)*

Under Rule 23(b)(1)(A), a class is proper where separate lawsuits would create a risk of imposing incompatible standards of conduct on the defendant. "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The

---

**5.** This also explains why Rodriguez did not understand the meaning of the terms in the declaration when asked about them in his deposition. (Rodriguez Dep., 27:10–28:5, 57:14–22, 100:4–8, 104:11–18.)

**6.** Domino's cites to *In re Goldchip Funding Co.,* 61 F.R.D. 592 (M.D.Pa.1974), as an example

where a court denied class certification because the named plaintiff did not have knowledge of the facts or business experience. In the instant suit, Jimenez and Rodriguez are knowledgeable about the facts from their own personal experience.

possibility that a defendant will be held liable in some cases and not in others is insufficient. *McDonnell Douglas Corp. v. U.S. District Court,* 523 F.2d 1083, 1086 (9th Cir. 1975). Rather, Rule 23(b)(1)(A) requires "incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions." *Id.*

Plaintiffs contend that there is a risk of inconsistent judgment because different courts may determine differently which tasks should be classified as exempt. (Mot'n, p. 22.) Plaintiffs argue that if they succeed on monetary relief while another class succeeds on injunctive relief alone, this would result in incompatible standards of behavior on behalf of Domino's. (Reply, p. 14.) Domino's, however, contends that even though they prevailed on an earlier claim of misclassification by one of the declarants, should a different general manager succeed on a claim, they would be able to act compatibly by paying an adverse judgment. (Opp'n, p. 16.)

The Court agrees with Domino's and find that if the various plaintiffs file separate suits and achieve different results, Domino's would not be incapable of fulfilling various judgments. Accordingly, certification under Rule 23(b)(1)(A) is not proper in this case.

### 2. *Rule 23(b)(2)*

Pursuant to Rule 23(b)(2), a class action is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." To fall within Rule 23(b)(2), the defendant's conduct must be generally applicable to the class, meaning the defendant has adopted a pattern or policy that is likely to be the same as to all class members. *Baby Neal v. Casey,* 43 F.3d 48, 52, 63–64 (3d Cir.1994). Additionally, class certification under Rule 23(b)(2) is not appropriate where the relief relates "exclusively or predominantly to money damages."

*Nelsen v. King County,* 895 F.2d 1248, 1255 (9th Cir.1990).

Plaintiffs contend that Domino's has acted on grounds applicable to all general managers and thus final injunctive relief is appropriate. (Mot'n, pp. 22–23.) Domino's, on the other hand, contends that Plaintiffs' main interest is in monetary damages and therefore certification under Rule 23(b)(2) is improper. (Opp'n, pp. 16–17.)

The Court agrees with Domino's that Plaintiffs' monetary relief predominates over the request for injunctive relief. Plaintiffs are former employees and thus an injunction as to Domino's behavior to current employees cannot be Plaintiffs' primary concern. Rather, a damages award is their main interest. Accordingly, certification under Rule 23(b)(2) is not appropriate.[7]

### 3. *Rule 23(b)(3)*

"Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 211 (9th Cir. 1975) (quoting Committee notes). A class action may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy. The Court will address each consideration in turn.

#### a. *Predominance*

Plaintiffs claim that the issue of whether general managers are improperly classified as exempt despite the non-managerial tasks performed is the issue that predominates, and that individual issues such as the amount of overtime worked and missed rest or meal periods do not defeat certification. (Mot'n, p. 24.) Rather, Plaintiffs contend that there

---

**7.** Plaintiffs cite to *Wang v. Chinese Daily News,* 231 F.R.D. 602, 612 (C.D.Cal.2005), as an example where this Court certified a class under Rule 23(b)(2) even though injunctive relief was on equal footing with the claim for monetary relief. In *Wang,* however, the class consisted of current and former employees. Plaintiffs in this suit seem to be former employees and thus injunctive relief cannot be their primary goal.

are a set of finite tasks performed by the general managers who receive the same training, exercise no independent judgment, and are therefore improperly denied overtime based on their improper classification. (Mot'n, pp. 4–12.)

Domino's, on the other hand, contends that in fact individual issues predominate and therefore class certification is inappropriate. (Opp'n, pp. 19–24.) Specifically, Domino's asserts that the issue presented is not whether certain tasks performed by the general managers are managerial or not, but how much time is spent on the non-managerial tasks. (*Id.*, p. 19.) This, argues Domino's, requires inquiry into the individual circumstances of each general manager and will require a determination of credibility of each general manager.[8] (*Id.*, p. 20.) Domino's also argues that the issue relating to the amount of discretion is likewise an individualized determination. (*Id.*, p. 21.) Finally, Domino's contends that matters relating to damages are individualized. (*Id.*, pp. 23–24.)

The Court agrees with Domino's that individual questions predominate. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. To determine whether common issues predominate, this Court must first examine the substantive issues raised by Plaintiffs and second inquire into the proof relevant to each issue. *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir.1981).

The Court notes that the common question raised by Plaintiffs is whether general managers are wrongly classified based on job title rather than the actual tasks performed.[9] Under the applicable IWC Order, Wage Order 5 Section 1(B)(1), an executive exemption applies to employees: (1) whose duties in-volve management of the enterprise; (b) who customarily directs the work of two or more other employees; (c) who has the authority to hire or fire other employees and whose recommendations about hiring and firing carry significant weight; (d) who regularly exercise discretion and independent judgment; and (e) primarily engage in duties which meet the test of exemption. (Plaintiffs' Lodgment of Exhibits, Ex. 23.)

As Domino's notes, however, the question of whether the specific tasks performed should be classified as exempt is not at issue. In fact, Domino's concedes that the tasks listed by Plaintiffs as non-exempt tasks are generally non-exempt. (Opp'n, p. 19.) Rather, the question presented to this Court is how much time the general managers spent on their various tasks. In other words, to determine which employees are entitled to overtime because of improper classification is an "individual, fact-specific analysis" of each general manager's performance of the managerial and non-managerial tasks. *See Morisky v. Public Serv. Electric & Gas Co.*, 111 F.Supp.2d 493, 498 (D.N.J.2000) (deciding classification as exempt under the Federal Labor Standards Act was improper where the court was required to inquire into each individual's job responsibilities). As Domino's points out, there were many variable which affected a particular manager's mix of duties (Opp'n, pp. 2–4, 19–21), such as: (1) the number of employees (Ayvazian Decl., ¶ 6; M. Garcia Decl., ¶ 3; Lopez Decl., ¶ 6); (2) the quality and experience of the general manager's employees (Ayvazian Decl., ¶ 13; Chavez Decl., ¶ 4; Mickelson Decl., x¶ 5; Dorado Decl., ¶ 4; C. Barranco Depo., 68:18–69:2; Bueno Depo. 83:19–84:8; Galvan Depo., 49:20–50:11); (3) volume of traffic of the stores requiring different amounts of time supervising and scheduling (Ayvazian Decl.,

---

8. For example, the Court will have to inquire into why a certain general manager is performing the different duties, *i.e.*, is it to avoid managerial tasks or was it in defiance of Domino's instructions. (Opp'n, pp. 20–21.)

9. Plaintiffs repeatedly cite to *Sav–On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 17 Cal. Rptr.3d 906, 96 P.3d 194 (2004), as an example of where the court found that the resolution of whether certain tasks should be classified as ex-empt or not is proper for class certification where there is a reasonably definite and finite list of tasks. *Id.* at 330–331, 340, 17 Cal.Rptr.3d 906, 96 P.3d 194. The Court agrees with Domino's, however, that the question presented here is not whether the tasks performed are exempt but rather how much time is spent on each task, which is necessarily an individualized inquiry. *See* text, *infra*.

¶ 3; Dugmore Decl., ¶ 3; Mickelson Decl., ¶ 4; C. Barranco Depo. 58:3–20; G. Martinez Depo. 75:11–14); and (4) a general managers' own management style and decisions (Alhazari Decl., ¶ 13; Dorado Decl., ¶ 10). These are just some examples of why the experiences of the general managers might vary.

■ Similarly, the question of the amount of discretion and role in hiring and firing is an individualized inquiry not suitable for class certification. The evidence also shows that general managers had different experience regarding firing employees: some never needed to (Ortiz Decl., ¶ 6; Perez Depo. 29:8–10) while others had their recommendations listened to (Bueno Depo. 63:2–65:24; Perry Depo. 97:16–98:14) and others' recommendations were not approved (Castaneda Depo. 56:5–58:19). Furthermore, as Domino's notes, these determinations necessarily require inquiries into credibility relating to why certain managers spent more or less time on the various tasks.[10] Because these questions and issues of proof are so individualized, the Court cannot say that the common question presented predominates.[11] Consideration of *Sav–On Drug Stores v. Superior Court*, 34 Cal.4th 319, 329–30, 17 Cal. Rptr.3d 906, 96 P.3d 194 (2004), and *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D.Cal.2006), does not change this conclusion.

In *Sav–On Drug Stores v. Superior Court*, 34 Cal.4th 319, 329–30, 17 Cal.Rptr.3d 906, 96 P.3d 194 (2004), the defendant drug store also focused on the variability of each class member's actual mix of duties, but the California Supreme Court nevertheless found that the trial court had not abused its discretion in finding that common issues predominated. *Id.* at 329, 17 Cal.Rptr.3d 906, 96 P.3d 194. The predominating issues were whether there had been an improper blanket reclassification and whether the generic duties performed by operating manager and assistant managers were managerial or non-managerial. On the record before the *Sav–On* trial court, those issues predominated over the need to look at each individual's mix of actual duties. Here, the second and sweeping issue of how certain tasks should be categorized, an issue which "can easily be resolved on a class-wide basis," is absent.[12] *Id.* at 331, 17 Cal.Rptr.3d 906, 96 P.3d 194. Rather, the predominating issue in this case is the actual mix of duties worked which entails a need to conduct an individual inquiry for each class member. Thus, while *Sav–On* holds that the need for individual query does not necessarily preclude certification where issues that can be determined on a class basis predominate, that is not the present record.

At oral argument, Plaintiffs also relied on *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D.Cal.2006). There, the court found the following three common issues predominated: (1) the common defense of non-exemption based on the weight of the trucks used by the subject employees; (2) the realistic expectations of the employer in terms of the duties of the employees; and (3) the characterization of the tasks performed. *Id.* at 490. *Romero*, however, is distinguishable from the facts presented here. First, although Domino's presents a common defense of non-exemption, the defense is based on facts that vary from employee to employee. In *Romero*, there was no dispute regarding the weight of the truck that formed the basis

---

10. The Court also agrees that standing with respect to the potential class members and the named plaintiff who have filed for bankruptcy is an issue unique to each individual. First, standing is not, as Plaintiffs claim, a matter that goes to the substantive merits of this suit. Rather, standing is a matter of subject matter jurisdiction. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir.2004). Furthermore, a Chapter 7 debtor does not have standing to bring suit. *Harris v. St. Louis Univ.*, 114 B.R. 647, 648 (E.D.Mo.

1990). Thus, standing does present additional individual issues to be decided by this Court.

11. The court notes, however, that the question of individual damages alone is insufficient to prevent class certification. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir.2001).

12. Domino's would also distinguish *Sav–On* on the ground that this case does not involve a blanket reclassification. (Domino's Opposition, p. 19 n. 8.)

for the exemption. Second, there is no information in the present record regarding the reasonable expectations of Domino's regarding the amount of time spent on each task. Rather, that expectation seems to vary based on the needs of the particular restaurant. Third, in the present case, there is no question as to whether the tasks performed are exempt or not—rather, as stated previously, the main question is the amount of time spent on each task.

In sum, this is not the typical case where a class can be certified because the class members' duties are, or can be determined to be, roughly identical, despite the need for individual damage determinations based on the number of hours worked. Here the variability goes to whether an individual class member has any claim at all for misclassification.

### b. *Is a Class Action Superior?*

■■■ Next, the Court must consider if the class is superior to individual suits. *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231. Rule 23(b)(3) lists four factors relevant to this determination, although the list is not exhaustive. *Id.* at 616, 117 S.Ct. 2231. The factors include: (1) interest of the members in individually controlling the prosecution of separate actions; (2) extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) desirability of concentrating the litigation in a particular forum; and (4) manageability of the class. The Court may also consider the availability of procedural alternatives. *Simer*, 661 F.2d at 672.

Plaintiffs contend that the class action is superior because the claims of individuals will be simultaneously resolved and repetitive litigation will be avoided. Plaintiffs further contend that the class will be manageable because they can use surveying and representative testimony[13] to determine the information regarding the amount of time spent on tasks and that an accurate, independent statistical analysis can be accomplished to provide this information. The Court does not agree. Representative testimony will not avoid the problem that the inquiry needs to be individualized. In other words, because the issues presented are to be determined based on an individual's experience, testimony will vary from employee to employee. Similarly, surveys and statistics may establish whether uniform classification was improper but will not be helpful in determining whether each general manager himself was wrongly classified or not.

■■■ Rather, the Court agrees with Domino's that trial of this case as a class action would be unmanageable because of the individualized inquiries required. Similarly, Domino's has a right to cross-examine each general manager to determine whether there is liability as to that specific person.[14] Because each general manager's experience and time spent on the various tasks may differ, the Court agrees that a class action trial will be unmanageable.[15]

To certify the class, the Court must also find that the class action is superior to other methods of adjudication. *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996). "A class action is the superior method for managing litigation if no realistic alternative exists." *Id.* at 1234–35. Here, other alternatives exist. First, each individual plaintiff can file a separate suit, following which consolidation may be appropriate. Alternatively, Domino's presents the option of a DLSE administrative hearing. (Opp'n, p. 28 citing *Kamm*, 509 F.2d at 211). Plaintiffs cite to *Bell v. Farmers Insurance Exchange*, 115 Cal.App.4th 715, 9 Cal.Rptr.3d 544 (2004), where the court listed some disadvantages inherent in an administrate hearing, including no award of attorney fees and the right to review by a court de novo. *Id.* at 745–46, 9 Cal.Rptr.3d 544. Nonetheless, the administrative hearing can be a quick proce-

---

**13.** Representative testimony also raises potential due process problems with regards to class members whose circumstances may not be adequately represented.

**14.** Domino's gives the example of simultaneous performance of managerial and non-managerial tasks, which can affect Domino's liability for each general manager.

**15.** If all managers performed roughly the same mix of time spent on each task, sampling might well be useful, but that is not the case here.

dure (Malhan Dep. 115:2–9) and does present a viable alternative.

Because of manageability of this suit as a class is questionable and because there are viable alternatives, the Court finds that certification under Rule 23(b)(3) is inappropriate.

## V. CONCLUSION

For the foregoing reasons, the motion for class certification is denied.